**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARSHALL ASNEN, et al.,<br>Plaintiffs,<br>v.<br>MICHAEL GEVURTZ, et al.,<br>Defendants. | Civil Action No. 2:26-CV-3465 |

**PLAINTIFFS' RICO CASE STATEMENT**

Pursuant to the Court's June 10, 2026 Order, (ECF 11), Plaintiffs, Marshall Asnen, David Brodtman, Mary Brodtman, Brett Ciarelli, Michael Dubin, Andrea Dubin, Gary Erlbaum, Vicki Erlbaum, Erlbaum Investments, LP, The Erlbaum Family 2005 Trust, The Trust for Vicki Erlbaum, Darryl Levine, Harry Madonna, Neil Reiff, Mark Rosenberg, Benjamin Wildstein, Harris Wildstein, Leslie Wildstein, and Mark Wildstein ("Plaintiffs"), by and through their undersigned counsel, respectfully submit the following RICO Case Statement.

**1. State whether the alleged unlawful conduct is in violation of 18 U.S.C. 1962(a), (b), (c), and/or (d).**

Defendants' unlawful conduct violated 18 U.S.C. § 1962(c) and (d).

As to § 1962(c), Defendant Michael Gevurtz ("Gevurtz"), employed by and associated with the Bluebird enterprise described below, conducted and participated, directly and indirectly, in the conduct of that enterprise's affairs through a pattern of racketeering activity consisting of repeated acts of mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

As to § 1962(d), Gevurtz and the Bluebird Defendants (defined below), together with RF Edge III LLC ("RF Edge"), Liberty Apartment Associates LLC ("Liberty"), and Edge Construction Services, LLC n/k/a Bluebird Construction Management, LLC ("Edge

Construction"), knowingly agreed and conspired to conduct and participate in the affairs of the enterprise through the pattern of racketeering activity alleged herein, in violation of § 1962(d).

**2. List the defendants and state the alleged misconduct and basis of liability of each defendant.**

a. Michael Gevurtz: Gevurtz is the central actor in the racketeering scheme at issue. Gevurtz owned, managed, and exercised control over Defendant Bluebird Lending, LLC and its affiliated entities. He is liable as the "person" under § 1962(c) who conducted the affairs of the Bluebird enterprise through a pattern of racketeering activity, and as a co-conspirator under § 1962(d). Gevurtz' misconduct includes:

(i) causing Bluebird to make insider loans to the Gevurtz borrowers (RF Edge and Liberty) on terms substantially more favorable than those offered to unaffiliated borrowers, including at below-market interest rates below Bluebird's own cost of capital;

(ii) causing Bluebird to forgo charging or collecting amounts owed by the Gevurtz borrowers, including default interest, late fees, extension fees, and maturity fees, despite their being delinquent on payment of interest and fees for years;

(iii) diverting Bluebird loan proceeds, including over $100,000 advanced for development of 2605 W. Oxford Street, to entities he owns and controls (including Edge Construction) for work that was never performed;

(iv) transmitting, and causing to be transmitted, false and misleading statements to Bluebird investors by mail, email, and interstate wire concerning, among other things, the status and performance of the insider loans, the state of construction at Gevurtz-borrower properties, and Bluebird's financial condition, including:

- a false October 15, 2025 investor email stating that all RF Edge loans would be "reinstated and performing with all past due interest and fees paid in full" by the end of Q4 2025 and that certain properties would be on the market for sale in Q1 2026, none of which occurred;
- a false April 8, 2021 investor email stating that Bluebird was being restructured for business reasons, "to accommodate additional funding capacity while maintaining investor diversification to all our loan assets," and that "the terms and conditions of your current investment will largely remain the same," when in reality the new organizational documents were being adopted to try to insulate Gevurtz and his conspirators from liability for their wrongful acts;
- a false February 19, 2025 investor email stating that Bluebird "is no longer viable" in light of the competitive real estate lending market and would

begin winding down, would cease making monthly distributions required under the governing documents, and would return capital to investors over the coming 12-18 months, when in reality Bluebird had sufficient funds and should have continued making required distributions and had become less competitive in the market because of Defendants' wrongful scheme and misappropriation of Bluebird funds and assets;

- a false November 15, 2019, email to investors attaching a "Bluebird Lending Overview May 2019" PowerPoint presentation that purported to provide a "company overview" of Bluebird's operations and lending practices, including the false assurance that "[p]ayment obligations are secured by first lien title insured mortgages," when in reality, Bluebird loans to Gevurtz borrowers (and possibly to other borrowers) were not first position loans but were subordinate to other lenders, posing outsized and unnecessary risks to Bluebird and its investors;
- a false December 20, 2025, email entitled "Bluebird Lending Investor Report," which falsely indicated that "all past due note rate interest for" RF Edge's loans had been paid, when in reality hundreds of thousands of dollars of unpaid interest and fees remained in connection with Bluebird's loans to RF Edge;[1]

(v) withholding required distributions to investors since early 2025 despite Bluebird having sufficient cash on hand (unpaid distributions to Plaintiffs currently total roughly $1 million);

(vi) ignoring contractually required redemption requests; and

(vii) using Bluebird funds to subsidize a money-losing loan-origination business, to pay himself excessive compensation, for expenditures to support Gevurtz' extravagant lifestyle including Philadelphia 76ers floor seats, and to repay Bluebird's own loans on which Gevurtz faces recourse as guarantor.

b. Bluebird Lending, LLC, Bluebird Lending I, LLC, Bluebird Lending II, LLC, and Bluebird Lending III, LLC: Four affiliated Pennsylvania limited liability companies (collectively, the "Bluebird Defendants") are controlled by Gevurtz. The four Bluebird Defendants, together with Gevurtz, constitute and/or are members of the RICO enterprise described below in response to question 6. Each is liable because Gevurtz used Bluebird's corporate structure and accounts as the instrumentality through which the fraudulent insider-

[1] Additional false and misleading statements by or on behalf of Gevurtz and the other Defendants are discussed below in response to question 5(b) and (c).

lending, fee-forgiveness, and fund-diversion scheme was executed, and because each entity was a vehicle through which investor funds were unlawfully retained, diverted, and concealed.

Plaintiffs further allege that RF Edge, Liberty, and Edge Construction, while not named as Defendants, participated directly in the racketeering scheme as both members of the association-in-fact enterprise and as co-conspirators under § 1962(d), as described in responses to questions 3 and 6 below.

**3. List alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each wrongdoer.**

The entities below participated in the fraudulent scheme as an instrumentality through which Gevurtz diverted Bluebird investor funds for his own benefit, and each is alleged to be a member of the association-in-fact enterprise and/or a co-conspirator under § 1962(d).

a. RF Edge: RF Edge is a Pennsylvania limited liability company and one of the two "Gevurtz borrowers" owned and/or controlled by Gevurtz. RF Edge received multiple loans from Bluebird on preferential, below-market terms; failed to repay principal, interest, and fees; and received Bluebird loan proceeds (including funds for the 2605 W. Oxford Street property) that were never used for their stated purpose of real estate development. RF Edge is presently the subject of at least nine separate enforcement actions filed by the City of Philadelphia relating to its real estate development activities, which was concealed from the Bluebird investors. The failure of RF Edge to comply with regulatory requirements injures Plaintiffs because RF Edge borrowed money from Bluebird for real estate development and can only repay that money after such development has taken place; because RF Edge cannot perform development activities while these regulatory violations are in place, RF Edge making repayment to Bluebird is unlikely at best. Gevurtz and his conspirators are believed to have kept the money RF Edge borrowed from Bluebird, which they have wrongfully diverted to themselves.

b. Liberty: Liberty is a Pennsylvania limited liability company and the second "Gevurtz borrower." Liberty received one Bluebird loan on preferential terms not available to unaffiliated borrowers and, like RF Edge, participated in the scheme to avoid repayment of amounts properly owed to Bluebird.

c. Edge Construction: Edge Construction is a Gevurtz-owned and/or controlled construction company believed to have received Bluebird loan proceeds funneled from Bluebird through the Gevurtz borrowers for development and construction work that was never performed (including in connection with the 2605 W. Oxford Street property).

**4. List the alleged victims and state how each victim was allegedly injured.**

The victims are the seventeen Plaintiffs identified in the Complaint (¶¶ 11-29): Marshall Asnen, David Brodtman, Mary Brodtman, Brett Ciarelli, Michael Dubin, Andrea Dubin, Gary Erlbaum, Vicki Erlbaum, Erlbaum Investments, LP, The Erlbaum Family 2005 Trust, The Trust for Vicki Erlbaum, Darryl Levine, Neil Reiff, Mark Rosenberg, Harry Madonna, Mark Wildstein, Benjamin Wildstein, Harris Wildstein, and Leslie Wildstein. Plaintiffs are Bluebird investors who collectively invested approximately $6 million in Bluebird.

Each Plaintiff was injured in substantially the same manner, including:

(i) loss of required monthly distributions that Bluebird ceased paying in early 2025 in violation of the Operating Agreement;

(ii) loss of, or inability to obtain, redemption proceeds owed upon properly submitted redemption requests which investors began submitting years ago (including requests submitted by Plaintiffs Brett Ciarelli, Darryl Levine, Michael Dubin, and Neil Reiff);

(iii) diminution in the value of their membership interests in Bluebird caused by the diversion of Bluebird capital to the Gevurtz borrowers and Edge Construction and the resulting impairment of Bluebird's loan portfolio and ability to generate returns;

(iv) loss of the use of their invested capital;

(v) continued and ongoing exposure to risk because Plaintiffs were fraudulently induced, through Gevurtz' misrepresentations, to refrain from exercising

redemption rights, demanding repayment, or otherwise taking action to protect their investments that they would have taken had they known the truth about the Gevurtz-borrower loans, Bluebird's true financial condition, and the other aspects of the fraudulent scheme described herein; and

(vi) the risk that the Gervurtz borrowers will never repay their loans because of the extensive regulatory violations that impedes development on the properties.

**5. Describe in detail the pattern of racketeering activities or collection of unlawful debts alleged for each RICO claim. The description of the pattern of racketeering shall include the following information as to each Defendant:**

**a. List the alleged predicate acts and specific statutes that were allegedly violated;**

**b. Provide the date of each predicate act, the participants in each predicate act, and a description of the facts constituting each predicate act;**

**c. If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Identify the time, place and substance of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made;**

**d. State whether there has been a criminal conviction for violation of any predicate act;**

**e. State whether civil litigation has resulted in a judgment with regard to any predicate act;**

**f. Describe how the predicate act forms a "pattern of racketeering activity;" and**

**g. State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe the alleged relationship and common plan in detail.**

Plaintiffs allege a single pattern of racketeering activity, applicable to the §1962(c) and (d) claims described above, consisting of repeated predicate acts of mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343) committed by Gevurtz, in his individual capacity and as the controlling person of the Bluebird Defendants, RF Edge, Liberty, and Edge Construction.

**a. predicate acts and statutes violated**

The predicate acts consist of violations of the mail fraud statute, 18 U.S.C. § 1341, and the wire fraud statute, 18 U.S.C. § 1343, arising from Gevurtz repeatedly transmitting, and causing to be transmitted, materially false and misleading statements and omissions to Bluebird investors by U.S. mail, email, and interstate wire.

**b, c. date/time, place, participants, and description/substance of predicate acts**

Plaintiffs presently identify the following categories and instances of predicate mailings and wire transmissions, recognizing that additional details relating to the predicate acts will be the subject of discovery:

- On October 15, 2025, Gevurtz, on behalf of himself and the Bluebird Defendants, sent via email to all Bluebird investors (including Plaintiffs) a "Dear Investors" investor update letter containing numerous false and misleading statements. This letter falsely stated that, "[b]y the end of Q4 2025 all [RF Edge] loans will be reinstated and performing with all past due interest and fees paid in full," and that, with respect to the properties RF Edge was supposed to be developing, "I am in the process of completing these projects to have them on the market for sale in Q1 2026." Gevurtz knew that these statement were false when made. He never had any intention of bringing the Gevurtz borrowers current on their loans (or collecting the significant amounts they owed to Bluebird), and in fact did not do so. He also misrepresented that the properties under development would be completed and ready for sale in Q1 2026, when he had not even begun construction on some of these properties at that time; and construction could not proceed on some of the properties in light of the extensive regulatory violations. These statements were thus false when made, and/or were made fraudulently or with reckless disregard for their truth.
- On April 8, 2021, Gevurtz, on behalf of himself and the Bluebird Defendants, sent an email to the investors (including Plaintiffs) entitled "Bluebird Lending Important Investor Information," containing numerous false and misleading statements. The email falsely stated that Bluebird was being restructured that "your investment in Bluebird Lending I, LLC is going to be transferred to a newly formed entity" for business reasons, "to accommodate additional funding capacity while maintaining investor diversification to all our loan assets," and that "the terms and conditions of your current investment will largely remain the same." In reality, the new organizational documents for the restructured

Bluebird organization were being adopted to try to insulate Gevurtz and his conspirators from liability for their wrongful acts. Both the wrongful acts and the purpose of the restructuring were concealed from investors. Gevurtz thus falsely represented that a new operating agreement was required for legitimate business reasons relating to Bluebird's lending operations, when his purpose was to try to limit Gevurtz' personal liability for the self-dealing scheme described herein that, at the time, was unknown to his victims. He further falsely told investors that the new organizational documents "will largely remain the same," which was also intentionally false and misleading.

- On February 19, 2025, Gevurtz, on behalf of himself and the Bluebird Defendants, sent an investor letter via email to all Bluebird investors (including Plaintiffs) entitled "Important Notice: Investor Return of Capital," stating that Bluebird "is no longer viable" in light of the competitive real estate lending market and (i) would begin winding down, (ii) would cease making monthly distributions required under the governing documents, and (iii) would return capital to investors over the coming 12-18 months. In reality, Bluebird had (and on information and belief has at all times had) sufficient funds to continue making the required distributions, and it had become less competitive in the market not because of competition but instead due to, among other things, Defendants' wrongful and scheme and misappropriation of Bluebird funds and assets.

- On November 15, 2019, Gevurtz, on behalf of himself and the Bluebird Defendants, sent an email to the investors (including Plaintiffs) entitled "Bluebird Lending Fund" that attached, among other things, a "Bluebird Lending Overview May 2019" PowerPoint presentation that purported to provide a "company overview" of Bluebird's operations. Therein, Gevurtz provided various assurances to Bluebird investors regarding Bluebird's lending practices, including the false assurance that "[p]ayment obligations are secured by first lien title insured mortgages." In reality, Bluebird loans to Gevurtz borrows (and possibly to other borrowers) were not first position loans but were subordinate to other lenders, posing outsized and unnecessary risks to Bluebird and its investors.

- On December 20, 2025, Gevurtz, on behalf of himself and the Bluebird Defendants, sent an email to the investors (including Plaintiffs) entitled "Bluebird Lending Investor Report," in which he stated that "all past due note rate interest for" RF Edge's loans had been paid. This was a false statement, and hundreds of thousands of dollars of interest and fees remained unpaid in connection with Bluebird's loans to RF Edge at this time, as Gevurtz knew. This email further stated to investors that two of RF Edge's properties had "an estimated completion late Q1 in time for the spring sales market." This too was false, the properties were not near completion and would not be ready for sale in late Q1, which Gevurtz knew at the time he sent this email.

- In fact, one month later, on January 15, 2026, Gevurtz sent a follow-up email to Plaintiffs/investors Benjamin Wildstein and Harris Wildstein entitled "RF Edge III and Liberty Default Calculations," in which he admitted that his prior statement that all past due RF Edge interest had been paid was false, attaching what Gevurtz admitted was "a spreadsheet that shows the additional interest and late fees due to the RF Edge III and Liberty loans." This email was conspicuously not sent to the other investors. The attached spreadsheet indicated that the amount of interest and fees owed by RF Edge was $242,818.48, but that was also false, and significant additional amounts were owed at that time by RF Edge, as Gevurtz knew.

**d. criminal convictions**

Plaintiffs are unaware of any criminal convictions of any Defendant for any predicate acts.

**e. civil judgments**

While Plaintiffs are not aware of any civil judgment relating specifically to any of the predicate act alleged herein, Gevurtz and his affiliated entities are (or recently have been) defendants in multiple civil actions involving similar allegations of self-dealing, fraud, and improper diversion of funds involving the same web of Gevurtz-controlled entities, including *Levels Investments LLC v. Lodise Wadley Sr.*, et al., Phila. C.C.P. No. 161101511; *Cohen v. Cutaiar, et al.*, Phila. C.C.P. No. 210302507; *Wilmington Savings Fund Society, FSB v. Bluebird Lending I LLC*, Phila. C.C.P. No. 240402044; *West v. RF Edge I, LLC, et al.*, Phila. C.C.P. No. 240503423; *BKP Development Group LLC, et al. v. Bluebird Lending, LLC* et al., Phila. C.C.P. No. 231101874; and *CL Batts, LLC v. Bluebird Companies, LLC and Edge Construction Services, LLC*, Phila. C.C.P. No. 231101615.

**f. how the predicate acts form a pattern of racketeering activity**

The predicate acts of mail and wire fraud span numerous years and are ongoing. This fraud occurred on multiple, repeated occasions and was directed at the same class of victims, Bluebird's investors. The acts of racketeering were committed in furtherance of the same

fraudulent scheme to conceal and enable Gevurtz' diversion of Bluebird assets to himself and his affiliated entities. That induced Plaintiffs to maintain their investments, refrain from seeking redemption, and forbear from taking other protective or corrective action. The predicate acts therefore satisfy both the "relatedness" and "continuity" requirements of a RICO pattern they share the same purpose, results, participants, victims, and methods of commission; and the scheme has continued over a substantial period of time with a threat of continued repetition, as Gevurtz continues to control Bluebird, the Gevurtz-borrower loans remain unresolved, and distributions and redemption requests remain unpaid.

**g. common plan or scheme**

The predicate acts are related as part of a single, common scheme by which Gevurtz used his control over Bluebird and its affiliated entities to:

(i) direct Bluebird capital to borrowers he owns or controls on preferential, below-market, and undercollateralized terms;

(ii) decline to enforce Bluebird's contractual rights to interest, default interest, fees, and other amounts owed to Bluebird by those same borrowers;

(iii) divert loan proceeds through those borrowers to a contractor he also owns or controls for work that was never performed;

(iv) use the resulting cash flow (and additional investor capital) to fund a money-losing affiliated business and his personal compensation and lifestyle, and to repay bank loans to Bluebird also used to fund this scheme to avoid recourse to Gevurtz who is believed to be a guarantor on such borrowing; and

(v) conceal the entire scheme from Plaintiffs through repeated false and misleading mail and wire communications designed to keep Plaintiffs invested and passive; each predicate act was a necessary step in maintaining investor confidence and forestalling redemption demands that would have exposed and unwound the scheme.

6. **Describe in detail the alleged "enterprise" for each RICO claim. A description of the enterprise shall include the following: (a) state the name of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise; (b) a description of the structure, purpose, functions and course of conduct of the enterprise; (c) a statement of whether any defendants are employees, officers or directors of the alleged enterprise; (d) a statement of whether any defendants are associated with the alleged enterprise; (e) a statement of whether**

**plaintiff is alleging that the defendants are individuals or entities separate from the alleged enterprise or that the defendants are the enterprise itself, or members of the enterprise; and (f) if any defendants are alleged to be the enterprise itself, or members of the enterprise, an explanation of whether such defendants are perpetrators, passive instruments or victims of the alleged racketeering activity.**

a. name/composition of the enterprise: Plaintiffs allege an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) consisting of "any union or group of individuals associated in fact although not a legal entity." The enterprise is formed by Michael Gevurtz, Bluebird Lending, LLC, Bluebird Lending I, LLC, Bluebird Lending II, LLC, Bluebird Lending III, LLC, RF Edge III LLC, Liberty Apartment Associates LLC, and Edge Construction Services, LLC n/k/a Bluebird Construction Management, LLC, together with other entities owned and/or controlled by Gevurtz (the "Bluebird Enterprise").

b. structure, purpose, function, and course of conduct: The Bluebird Enterprise's nominal, legitimate purpose is to operate a real estate development lending business, raising capital from investors such as Plaintiffs (in addition to other sources such as bank loans), and using and lending funds for acquisition and improvement of properties in the Philadelphia area, in exchange for interest, fees, and the contractual right to investor distributions. Its actual purpose and function, as used by Gevurtz and the Bluebird Defendants, was a continuing process by which Bluebird's capital was funneled to Gevurtz-controlled borrowers (RF Edge and Liberty) on non-arm's-length terms. Specifically, those borrowers' obligations were not enforced, loan proceeds were further diverted to a Gevurtz-controlled contractor (Edge Construction) for unperformed work, and the resulting harm to Bluebird's investors was concealed through false and misleading communications. The Bluebird lending entities served as the financial conduit and source of investor capital for Gevurtz and the businesses with whom he acted in concert. Gevurtz directed and controlled all enterprise decision-making. RF Edge

and Liberty served as the borrower-conduits through which funds were diverted out of Bluebird. Edge Construction served as one of the ultimate recipients of diverted funds for work it never performed.

c. officers/directors/employees: Gevurtz is, on information and belief, the manager, officer, and/or controlling member of each of the Bluebird Defendants, and the owner and/or controller/principal of RF Edge, Liberty, and Edge Construction. Plaintiffs do not at this time have information on further participating employees of the enterprise other than Gevurtz.

d. association with the enterprise: All named Defendants and the non-party wrongdoers are associated with, and conduct or participate in the affairs of, the Bluebird Enterprise.

e. Defendants as separate from or identical to the enterprise: Gevurtz (the "person" liable under § 1962(c)) is distinct from the Bluebird Enterprise, which includes not only Gevurtz but also the separate corporate entities Bluebird Lending, LLC, Bluebird Lending I, LLC, Bluebird Lending II, LLC, Bluebird Lending III, LLC, RF Edge, Liberty, and Edge Construction. All eight formed an association-in-fact. While Gevurtz is also a member of the enterprise, the Bluebird Enterprise as a whole (a collection of legally distinct corporate entities and Gevurtz acting in concert) is a separate entity from Gevurtz individually, satisfying the distinctness requirement of § 1962(c).

f. role of enterprise members: The Bluebird Defendants, RF Edge, Liberty, and Edge Construction are alleged to be members of the enterprise that were used by Gevurtz as perpetrators/instrumentalities of the racketeering activity. They were passive corporate vehicles directed by Gevurtz to carry out the fraudulent scheme. They are also participants and beneficiaries of Gevurtz' scheme, not its victims. Gevurtz himself is alleged to be the principal

perpetrator and the "person" under § 1962(c) who is distinct from the enterprise through which he operates.

**7. State and describe in detail whether plaintiff is alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.**

Plaintiffs allege that the enterprise and the pattern of racketeering activity are separate and have not merged into a single entity. The Bluebird Enterprise is a real estate lending and development business with legitimate operations (loan origination, servicing, investor relations, etc.) independent of the racketeering activity. The pattern of racketeering activity discussed herein is the means by which Gevurtz misused the enterprise's legitimate structure and operations for his own unlawful enrichment. The enterprise has an existence, and the capacity to function, separate and apart from the pattern of racketeering activity.

**8. Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual daily activities of the enterprise, if at all.**

The racketeering activity is closely related to, but distinguishable from, Bluebird's usual daily business activities. Bluebird's ordinary, legitimate business includes raising investor capital and making arm's-length loans for real estate development (among other things) at competitive interest rates, with proper documentation, and with standard fee assessment and collection efforts. The racketeering activity differs in that it involved non-arm's-length, preferential loans to Gevurtz-controlled borrowers, at below-market and below-cost-of-capital interest rates. It also differs in that the racketeering activity included deliberate non-enforcement of loan terms against those same Gevurtz-related borrowers. Racketeering activity also included the diversion of loan proceeds to Gevurtz-controlled entities for work that was never performed. It also included the transmission of false and misleading communications to investors to conceal and facilitate the foregoing. In other words, the enterprise's legitimate lending apparatus was the

vehicle and the cover for the racketeering scheme, but the specific acts of fraud were not part of Bluebird's ordinary and proper lending business.

**9. Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.**

The Bluebird Enterprise benefitted from the pattern of racketeering activity by:

(i) obtaining investment funds from misled investors who believed their capital would be put to commercially reasonable purposes for arm's-length loans for real estate development at market interest rates, with proper documentation, fee assessment, and collection efforts, who would not have invested in an enterprise that practiced the self-dealing racketeering scheme described herein;

(ii) allowing real estate development borrowers that Gevurtz owned and controlled to obtain below-market financing for real estate development projects, subsidized by Bluebird investor capital;

(iii) allowing real estate development borrowers that Gevurtz owned and controlled to avoid having to repay principal and interest in connection with their loans, to not have to pay fees and penalties in connection with same, and to avoid default and the sale of assets to satisfy debts to Bluebird;

(iv) channeling diverted loan proceeds to companies Gevurtz owned or controlled as payment for work that was not performed;

(v) funding a money-losing Gevurtz-related origination business, which, in connection with the other aspects of the fraudulent scheme discussed herein (including the failure to pay required distributions and the refusal to honor investor redemption demands), allowed Bluebird to repay loans in connection with which Gevurtz faced liability as guarantor, using investor funds and borrower repayments to service Bluebird's debt instead of allocating funds to investors; and

(vi) funding Gevurtz' excessive compensation and personal expenditures (including sports tickets) using investor capital that should have been distributed or properly deployed.

**10. Describe the effect of the activities of the enterprise on interstate or foreign commerce.**

The Bluebird Enterprise's activities affected interstate commerce in multiple respects: (i) Plaintiffs include residents of New Jersey and Florida, as well as Pennsylvania, who transmitted investment funds and received distributions and communications across state lines; (ii) the fraudulent communications described herein were transmitted via email and interstate wire

facilities; (iii) Bluebird's lending operations involve interstate banking relationships and capital markets; and (iv) the real estate development financed by Bluebird, while located in Philadelphia, is part of a business that solicits and accepts investment capital from out-of-state investors and obtains financing from interstate financial institutions. The use of interstate mail and wire facilities to perpetrate the fraudulent scheme independently satisfies the interstate commerce nexus required for the predicate acts of mail and wire fraud.

**11. If the complaint alleges a violation of 18 U.S.C. 1962(c), provide the following: (a) state who is employed by or associated with the alleged enterprise, and (b) state whether the same entity is both the liable "person" and the "enterprise" under 18 U.S.C. 1962(c).**

a. persons associated with the enterprise: Gevurtz is employed by and associated with the Bluebird Enterprise as its controlling individual, manager, and/or officer, and conducted the affairs of the enterprise through the pattern of racketeering activity described herein. The Bluebird Defendants, RF Edge, Liberty, and Edge Construction are likewise associated with the enterprise as its constituent entities.

b. identity of person and enterprise: Plaintiffs allege that Gevurtz is the liable "person" under § 1962(c), and that the enterprise is the association-in-fact of Gevurtz, the Bluebird Defendants, RF Edge, Liberty, and Edge Construction as described in question 6. Because the enterprise as alleged is a collection of legally distinct entities together with Gevurtz acting in concert, and Gevurtz is the person who used that enterprise as a vehicle for the racketeering activity, the "person" and "enterprise" are not identical, satisfying the distinctness requirement applicable to § 1962(c) claims.

**12. If the complaint alleges a violation of 18 U.S.C. 1962(d), describe in detail the facts showing the existence of the alleged conspiracy.**

Plaintiffs allege that Gevurtz, the Bluebird Defendants, RF Edge, Liberty, and Edge Construction knowingly agreed to the overall objective of the scheme to obtain and retain Bluebird investor capital through false and misleading communications while diverting that capital for Gevurtz' personal benefit and that each agreed to commit, and did commit, at least two predicate acts in furtherance of that scheme. The factual basis for the conspiracy includes: (i) the coordinated structuring of preferential loans from the Bluebird Defendants to RF Edge and Liberty, which required the knowing participation of both the lending entities (controlled by Gevurtz) and the borrowing entities (also controlled by Gevurtz); (ii) the coordinated non-enforcement of those loans, requiring the agreement and forbearance of both lender and borrower entities under common control; (iii) the channeling of loan proceeds from the Bluebird Defendants, through RF Edge and/or Liberty, to Edge Construction for work that was never performed, which necessarily required the knowing participation and agreement of all entities in that chain; and (iv) the ongoing and repeated issuance of false and misleading investor communications over an extended period, which reflects a continuing, agreed-upon course of concealment rather than isolated or independent conduct. Because Gevurtz owned, controlled, and directed each participating entity, the requisite agreement may be inferred from the entities' coordinated conduct and common direction, as well as from the structure of the transactions themselves, which had no legitimate business rationale independent of the scheme to defraud.

**13. Describe the alleged injury to business or property.**

Plaintiffs suffered injury to their business and property interests in the form of: (i) unpaid monthly distributions required under the Bluebird Operating Agreement, accruing since February 2025, currently totaling roughly $1 million; (ii) unpaid redemption proceeds owed to Plaintiffs

Brett Ciarelli, Darryl Levine, Michael Dubin, and Neil Reiff; (iii) diminution in the value of Plaintiffs' membership interests in Bluebird, caused by the impairment of Bluebird's loan portfolio (including the substantial uncollected principal, interest, and fees owed by the Gevurtz borrowers), and the diversion of Bluebird capital for non-business purposes; and (iv) loss of the use and time value of their invested capital. These are concrete financial losses to Plaintiffs' property interests in their Bluebird membership interests and contractual distribution and redemption rights, not personal injuries or speculative harms.

**14. Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.**

Defendants' racketeering activity directly and proximately caused Plaintiffs' injuries. Defendants' false and misleading mail and wire communications were the direct means by which Plaintiffs were induced to maintain their investments, refrain from exercising redemption rights, and forbear from taking action (such as demanding an accounting, pursuing legal remedies, or withdrawing capital) that would have mitigated or prevented their losses. Had Defendants not misled Plaintiffs with untruthful information about the status of the Gevurtz-borrower loans, the diversion of loan proceeds, and Bluebird's true financial condition and operations, Plaintiffs could have sought redemption and protection of their capital earlier, before the full extent of the diversion and impairment occurred. There is no independent, intervening cause between Defendants' fraudulent scheme and Plaintiffs' losses; the losses flow directly from the same conduct that constitutes the racketeering activity itself.

**15. List the damages sustained by reason of the violation of 18 U.S.C. 1962, indicating the amount for which each defendant is allegedly liable.**

Plaintiffs collectively invested approximately $6 million in Bluebird and seek to recover, subject to proof and a damages analysis to be developed through discovery and expert testimony,

the following categories of damages, trebled pursuant to 18 U.S.C. § 1964(c): (i) unpaid distributions owed under the Operating Agreement since February 2025, in the amount of 10% per annum on the amount invested; (ii) unpaid redemption amounts and unreturned capital contributions; (iii) the diminution in value of Plaintiffs' Bluebird membership interests; and (iv) prejudgment interest on all amounts owed. Plaintiffs presently allege that all named Defendants are jointly and severally liable for these damages, as each participated in or was the instrumentality of the racketeering scheme. The precise allocation of damages among Defendants, and the total dollar amount of damages attributable to each category, will be established through discovery, including Bluebird's complete financial records and an accounting of amounts owed by the Gevurtz borrowers, and will be the subject of expert damages testimony.

**16. List all other federal causes of action, if any, and provide the relevant statute numbers.**

None.

**17. List all pendent state claims, if any.**

Plaintiffs assert the following pendent state law claims under Pennsylvania law:

(i) breach of the Bluebird Operating Agreement (Count I)

(ii) fraud/misrepresentation (Count II)

(iii) breach of fiduciary duty (Count III)

(iv) civil conspiracy (Count IV)

(v) declaratory judgment regarding which version of the Operating Agreement controls (Count V)

(vi) conversion/misappropriation of investor funds (Count VI)

(vii) corporate waste/mismanagement (Count VII)

**18. Provide any additional information that you feel would be helpful to the court in processing your RICO claims.**

As noted above, Gevurtz and his affiliated entities are presently the subject of numerous other cases involving substantially similar allegations of self-dealing, fraud, and improper diversion of funds through the same web of interrelated, Gevurtz-controlled entities. Plaintiffs believe these related proceedings, along with the City of Philadelphia's multiple pending enforcement actions identified in the Complaint, will provide further relevant evidence of Defendants' pattern of conduct and are relevant context for the racketeering pattern alleged herein. Plaintiffs further note that significant relevant evidence relating to Defendants' wrongdoing and Plaintiffs' RICO claims including Bluebird's financial and banking records, the full universe of investor communications, and records concerning the relationship between and among RF Edge, Liberty, Edge Construction, and the Bluebird entities remains in Defendants' exclusive possession and will be the subject of discovery. Plaintiffs anticipate such discovery could lead to the identification of additional predicate acts, additional injured investors, other participants in the fraudulent scheme, and a more precise damages calculation than is presently possible.

Respectfully submitted,

/s/ Neal Troum
George M. Vinci, Jr., Esquire
Neal R. Troum, Esquire
Adam A. Filbert, Esquire
One Logan Square, Suite 1800
130 N. 18th Street
Philadelphia, PA 19103
(215) 241-8888, (215) 241-8844 (fax)
gvinci@lawsgr.com, ntroum@lawsgr.com,
afilbert@sgrvlaw.com

Dated: July 6, 2026

Attorneys for Plaintiffs

**Certificate of Service**

I, Neal Troum, hereby certify that on this 6th day of July, 2026, I served the foregoing through the Court's electronic filing system, which served it upon all counsel of record.

/s/ Neal Troum
Neal Troum